Entered on Docket
October 12, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: October 12, 2011

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                   No. 09-70272 EDJ
                                        Adv. No. 10-04028 AJ
SHANNON LYNN SPANGLER,

                Debtor.    /
MARBLESTONE FUNDING
ENTERPRISE, INC.,

                Plaintiff,
vs.

SHANNON LYNN SPANGLER,

                Defendant.  /

## DECISION

This is an action under Bankruptcy Code § 523(a)(2), (4), and (6) (respectively, fraud, embezzlement, and willful and malicious injury) by which plaintiff Marblestone Funding Enterprise, Inc. ("Marblestone") seeks to establish and render nondischargeable a debt it claims it is owed by defendant Shannon Lynn Spangler, the above debtor. (Because a number of witnesses in this adversary proceeding share the surname, "Spangler," the court will hereinafter

Decision

refer to the debtor/defendant as "Shannon.")  The court will issue its judgment in favor of Shannon.

A. <u>Background</u>

At the time of the acts complained of, Marblestone was a mortgage loan broker that was co-owned by Cara Milgate ("Milgate") and Shawn Spangler, Shannon's aunt.  Its primary activity revolved around the solicitation of real estate brokers whose clients were in need of financing.  If Marblestone was successful in locating a lender for the broker's real estate client, it would earn a commission, payable upon the close of sale.

On occasion, other brokers would refer business to Marblestone.  On some occasions, Marblestone was not able to locate a lender, but maintained contacts with "lead brokers" that were able to do so.  In such cases, the lead broker would sometimes handle the distribution of commissions, often to a number of brokers.  On other occasions, Marblestone would distribute the commissions.

Shannon was Marblestone's employee, whose duty was to locate lenders for Marblestone's broker clients.  She held a real estate sales license under which she was required to work under the supervision of a licensed broker, in this case Milgate.

The terms of Shannon's employment with Marblestone were both oral and in writing.  As to the former, Shannon and Marblestone had agreed that Shannon was authorized to negotiate the rate of Marblestone's commission as to business she had procured, so long as the commission was not less than one-percent.  Additionally, as to any commission income from loans for which Shannon was responsible,

Case: 10-04028    Doc# 62    Filed: 10/12/11    Entered: 10/12/11 15:47:53    Page 2 of 15

Shannon would be entitled to retain 75% and Marblestone would be entitled to 25%. Shannon had an arrangement with her fellow Marblestone employee, Alicia Muniz ("Muniz"), under which they would split all their commissions on a fifty - fifty basis.[1]

As to written employment terms, Shannon agreed to abide by Marblestone's policy manual when she joined Marblestone in November 2002. One provision therein, Section 6.7, set forth Marblestone's policy that it would issue commission checks for referring brokers only to brokers that Marblestone had pre-approved, and that the funds for such checks were to flow from the title company to Marblestone, and then to the referring broker.[2]

In 2007, a dispute arose between Shannon, on the one hand, and Marblestone's owners, Milgate and Shawn Spangler, on the other, regarding a Mike Pagani ("Pagani") and his entitlement to receive commissions in respect of business he had referred to Marblestone.

---

[1] Muniz is a chapter 13 debtor in this court. Marblestone had commenced a similar adversary proceeding against Muniz, which had been consolidated for trial with the present adversary proceeding. Marblestone and Muniz reached a settlement prior to the trial hereof.

[2] Section 6.7 reads as follows:
1. MFI [Marblestone] will always receive all loan proceeds from title company and in turn cut a check to the Broker.
2. Broker must be approved per MFI Broker Approval Application. Monica Spangler handles all broker approvals.
3. Checks will only be cut to approved broker - 'Name on License.' NO EXCEPTIONS!" [Emphasis in original.]

Decision 3

Pagani was in a position to refer to Marblestone, and did in fact refer to Marblestone, a number of high-dollar loan transactions that were very lucrative for Marblestone.

Shannon argued that, as to such referred transactions, Pagani should receive the full referral commission that any Marblestone-approved referring broker would be entitled to receive from Marblestone. Milgate disagreed, arguing that although Pagani held a consumer finance license, he was not a licensed broker, and was not on Marblestone's approved broker list. Milgate testified that she had told Shannon that if Shannon wanted to compensate Pagani for the loans he had referred to Marblestone, she should pay such compensation to Pagani out of her own share of the commission proceeds. Shannon disputes this testimony.

In 2007, a series of at least seven transactions occurred in which the lead broker did not send all of the commission money to Marblestone, but rather, divided up the commission money among various claimants, including Marblestone. It is these transactions that form the basis for Marblestone's nondischargeability claims herein.[3]

---

[3] Marblestone's Trial Brief filed September 21, 2011 references the following seven loans, the trial exhibits as to which are as follows:

| Borrower | Exhibit No. |
| --- | --- |
| Christenson | 16 |
| Perez | 20 |
| James | 19 |
| Sisneros | 20 |

(continued...)

Decision 4

Most of these transactions involved another broker, Lordsman, Inc. ("Lordsman"), with whom Marblestone and Pagani did a substantial amount of business.[4] The transactions in question typically occurred when a loan had originated in a state in which Lordsman, but not Marblestone, was licensed, or when Lordsman had the primary contact with the lender, and was thus serving as the lead broker.

More specifically, in such transactions, Pagani referred a broker to Marblestone, through Shannon or Muniz. Marblestone then referred the opportunity to Lordsman, and Lordsman then located a lender. Upon the close of escrow, the lender paid out the commissions to Lordsman. Lordsman then retained its own commission, and paid a portion of the remaining commission moneys to,

---

[3](...continued)
| | |
|---|---|
| De la Fuenta | 25 |
| Barlow | 24 |
| Tezak | 26. |

Additionally, Marblestone introduced evidence regarding the following loans:

| Borrower | Exhibit No. |
|---|---|
| Moody | 14 |
| Glodenberg | 15 |
| Quintana | 18 |
| Wight | 22 |
| Kwan | 23. |

[4]Lordsman served as the lead broker in the loans referenced in Exhibits nos. 18, 19, 20, 21, 22, 23, and 24.

Decision 5

respectively, Pagani and Marblestone.  Marblestone then paid Shannon and Muniz 75% of the commission funds that Marblestone had received.

In another transaction at issue,[5] the flow of funds was as just described, only the lead broker was Global Mortgage rather than Lordsman.  In several transactions, see Exhibits 15 and 16, Marblestone established the amount, but not the identity of the recipient(s), of the commissions that Lordsman paid out to entities other than Marblestone.[6]

Marblestone contends that as to each of the transactions at issue, Lordsman or whoever was serving as lead broker, should have sent all of the commission moneys to Marblestone, and none of the commission moneys to Pagani or anyone else.  In each case, Marblestone contends that Shannon defrauded it out of, or embezzled, or converted the moneys that Lordsman sent to Pagani (or persons unknown), all to Marblestone's damage in the sum of at least $721,950.[7]

---

[5] See Exhibit 15.

[6] In one transaction, see Exhibit 26, the lead broker was Capital First, which sent all of the commission money to an entity called "Shannon Spangler, Inc.", which then sent a portion of the money to Marblestone.  Shannon testified that this transaction occurred after Shannon had left Marblestone's employ.

[7] Marblestone's Trial Brief filed September 21, 2011, page 10.  It appears to the court that, in calculating this amount, which is based on the loans mentioned in Exhibits 16, 19, 20, 24, 25, and 26, see fn. 3, ante, Marblestone included as damages the amounts that it did, in fact, receive from the lead broker, and that it did not take into account the fact that even if
(continued...)

After Marblestone discovered that lead brokers had paid moneys to Pagani, it filed suit against Shannon and Muniz in the Alameda County Superior Court. On October 20, 2009, while the suit was pending, Shannon filed a voluntary chapter 7 petition herein. The present adversary proceeding followed.

B. Discussion

   1. Evidentiary Rulings

   At trial, the court made a number of evidentiary rulings.

   a. Fifth Amendment. Marblestone argues that "[d]efendants have refused to testify as to various matters, and have refused to turn over documents, based upon their assertion of Fifth Amendment rights against self-incrimination." Marblestone's Trial Brief filed September 21, 2011. Marblestone therefore contends that this court should therefore draw adverse inferences against Shannon. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) (Fifth Amendment does not bar adverse inferences against parties to civil actions that refuse to testify in response to probative evidence offered against them). Marblestone further argues that Shannon should be barred from testifying or otherwise providing evidence relating to any matters as to which she had claimed her Fifth Amendment privilege. General Motors Co. v. Haraud, 410 B.R. 569, 575-76 (Bankr. E.D. MI 2009).

---

   [7](...continued)
   Marblestone had been entitled to the moneys the lead broker paid to Pagani or persons unknown, Shannon and Alicia Munoz would have been entitled to a payment of 75% of such moneys.

Decision                                7

However, Marblestone did not identify any particular instances of any particular refusals by Shannon to testify or produce documents in this or any other any proceeding, and admitted during trial that Shannon had responded to all discovery in this proceeding without claiming any Fifth Amendment privilege.

Marblestone's Fifth Amendment contention is therefore without merit.

  b. <u>Chad Spangler's Unemployment Compensation Hearing</u>.

Marblestone contends, based on the doctrine of issue preclusion and "privity," that Shannon is bound by certain findings that an administrative tribunal made in connection with an unemployment compensation claim by Chad Spangler, Shannon's brother who worked at Marblestone as a loan processor. Shannon, however, was not a party to the unemployment compensation proceeding, had no economic interest in Chad Spangler's unemployment claim, and did not have an identity of interest with Chad to the point that her interests were fully represented by Chad. Nor could Shannon have any reason to expect that she might be bound by any findings by the administrative tribunal in connection with Chad's unemployment claim.

There was thus no privity between Shannon and Chad Spangler, and Marblestone's contention is therefore without merit. <u>Clemmer v. Hartford Ins. Co.</u>, 22 Cal.3d 865, 875 (1978) ("In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party

Decision              8

to be estopped should reasonably have expected to be bound by the prior adjudication."); Lynch v. Glass, 44 Cal.App.3d 943 (1975).

  c. <u>Bank of America Records</u>.  Marblestone sought to introduce into evidence certain documents it had subpoenaed from Bank of America that the bank delivered to court on the day of trial, and which Shannon's trial counsel had not previously seen.  Marblestone, however, did not produce them to Shannon seven days before the trial, as required by this court's Scheduling Order filed May 13, 2011.  Nor did Marblestone justify its failure to do so.

  The Scheduling Order provided that non-compliance could result in, among other things, "exclusion of evidence."  The court accordingly ruled that the Bank of America documents were not admissible.

  d. <u>Police Report</u>.  Marblestone sought to introduce into evidence a police report from the Fremont Police Department that that department had issued after Milgate and Shawn Spangler had contacted it in January 2008.  Marblestone did not disclose the report to Shannon in its Fed.R.Civ.P. 26(a)(1) disclosure, applicable to adversary proceedings in bankruptcy cases via Fed.R.Bankr. P. 7026, even though it had been available from the outset of this bankruptcy case.  Nor did Marblestone establish that its failure to disclose the report was "substantially justified" within the meaning of Fed.R.Civ.P. 37(c)(1), applicable to adversary proceedings in bankruptcy cases via Fed.R.Bankr.P. 7037.

Decision          9

Accordingly, the court ruled that the police report was not admissible.[8] Fed.R.Bankr.P. 7037 and Fed.R.Civ.P. 37(c)(1).

e. <u>Emails</u>. Shannon sought to introduce into evidence certain emails. Shannon did not disclose the emails to Marblestone in her Fed.R.Civ.P. 26(a)(1) disclosure, even though they had been available from the outset of this bankruptcy case. Nor did Shannon establish that her failure was "substantially justified" within the meaning of Fed.R.Civ.P. 37(c)(1).

Accordingly, the court ruled that the emails in question were not admissible. Fed.R.Bankr.P. 7037 and Fed.R.Civ.P. 37(c)(1).

2. <u>Marblestone's § 523(a) Nondischargeability Claims</u>

Marblestone's complaint alleges claims under Bankruptcy Code § 523(a)(2)(A), (4), and (6).[9]

---

[8] Given this ruling, the court did not address the issue of whether the hearsay within the police report was admissible, even if the report might have otherwise qualified for admission under the business records exception to the hearsay rule under Fed.R.Evid. 803(6) or the public records exception under Fed.R.Evid. 803(8).

[9] The subsections of Bankruptcy Code § 523(a) at issue herein provide, in relevant part:
   A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
   . . .
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
       (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
                                                          (continued...)

Decision                         10

To prevail under § 523(a)(2)(A), a creditor must establish that: (1) the debtor made a representation, (2) with knowledge of its falsity, (3) with the intention and purpose of deceiving the creditor, (4) that the creditor relied on the representation, and (5) that the creditor sustained damage as the proximate result thereof. In re Britton, 950 F.2d 602, 604 (9th Cir. 1991). The creditor must establish each of these elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991).

To prevail under § 523(a)(4) on an embezzlement theory, a plaintiff must establish that the defendant had been entrusted with property, and fraudulently misappropriated such property. In re Littleton, 942 F.2d 551, 555 (9th Cir. 1991) (In the context of nondischargeability, "[e]mbezzlement . . . requires three elements: '(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud.'" (internal citations omitted)); In re Wada, 210 B.R. 572, 576 (9th Cir. B.A.P. 1997).

---

[9](...continued)
. . .
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
. . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

Decision  11

To prevail under § 523(a)(6), the plaintiff must establish that the defendant committed a wrongful act with the intention of causing plaintiff injury.  In re Geiger, 523 U.S. 57 (1998).

The court holds that Marblestone failed to maintain its burden of proof as to its contentions under these provisions.

First, neither Lordsman nor any other lead broker testified at trial.  Nor did Pagani testify.  Thus, the evidence presented did not include any testimony or documentary evidence as to any understanding or contractual arrangements between Lordsman and Pagani that might have explained why Lordsman sent commissions to Pagani and, with one exception discussed infra, how it determined the amount.

Nor did the evidence show what, if anything, Shannon had promised Pagani in exchange for his referrals or if, or by what right, Shannon was in a position to cause Lordsman (or other lead brokers) to send commissions to Pagani or anyone else.

This is so notwithstanding the fact that, on one occasion (Perez loan, Exhibit 20), Shannon sent an email to an escrow officer instructing the officer to send Pagani $23,562 out of a total commission of $107,070, and to send approximately $75,000 to Marblestone.  In that email, Shannon referred to Pagani as "my partner."

Shannon contends that Marblestone was aware that Pagani was to be paid as to this and the other loan files involved, and that Marblestone was aware of and had signed off on such transactions. Marblestone's disagrees while admitting that on two occasions, it

Decision                                   12

had approved payments to Pagani, either by error, or as a one-time exception to its policy of not paying commissions to brokers it had not approved.

The loan file in question contains a reference to Marblestone being owed $80,482 in connection with the transaction, and some handwritten notes referring to Pagani's $23,562. A worksheet in that file references that Marblestone was entitled to, or expecting, a credit of $75,006.

The best, then, that the court can glean from the evidence is that, as to such transaction, the evidence was inconclusive.

And the key fact remains that, as to every one of the transactions at issue herein, Marblestone presented no evidence to show that it was contractually entitled to any commission moneys above and beyond the amounts that it actually received.

Marblestone argues that, because an amount corresponding to its minimum one-percent commission showed up in its internal files as the expected commission, and because it received that amount, it had no way of knowing whether and when Shannon or Muniz had concealed from it the occurrences in which one of them had negotiated a higher commission for Marblestone, or what such negotiated commission was.

Even if so, however, it does not follow from Marblestone's lack of information that Marblestone was, in fact, entitled to more than a one-percent commission in the situations at issue when Pagani or persons unknown received commissions directly from Lordsman or other lead brokers.

Decision 13

Moreover, although Marblestone's policy manual did state that
Marblestone "will always receive all loan proceeds from title
company and in turn cut a check to the Broker," Marblestone failed
to explain at trial why Lordsman or any other lead broker would be
bound by Marblestone's policy in this regard, and thus, required to
allow Marblestone to distribute all the commissions.

        Finally, it is significant that Muniz did not testify at trial.
Shannon disclaimed having engaged in any misconduct.  Thus, if and
to the extent that Muniz was responsible for the wrongful diversion
of commissions, a matter as to which no evidence was presented,
Marblestone did not establish that Shannon knowingly participated in
any such misconduct by Muniz.

        Apart from the above, Marblestone argues that Shannon stole its
clients and pocketed the profits therefrom while she was working for
Marblestone.  The evidence, however, failed to establish that she
did so.

## C. Conclusion

        Marblestone failed to establish by a preponderance of the
evidence that Shannon committed any fraud, embezzled any funds, or
caused Marblestone any willful and malicious injuries within the
meaning of Bankruptcy Code § 523(a)(2)(A), (4), or (6).  The court
will therefore issue its judgment in favor of Shannon.

                          **END OF ORDER**

Case: 10-04028   Doc# 62   Filed: 10/12/11   Entered: 10/12/11 15:47:53   Page 14 of 15

COURT SERVICE LIST

Lawrence A. Jacobson
Law Offices of Cohen and Jacobson
900 Veterans Blvd. #600
Redwood City, CA 94063

Chris D. Kuhner
Kornfield, Nyberg, Bendes and Kuhner
1970 Broadway #225
Oakland, CA 94612

James A. Shepherd
Law Offices
514 El Cerrito Plaza
El Cerrito, CA 94530-4006

Decision    15